IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| RYAN FRANK DEMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 324-038 |
| | ) | |
| UNIT MANAGER DENISHA FOSTER; LT. | ) | |
| MALCOLM WILLIAMS; and CERT | ) | |
| OFFICER BOBBY CLARK, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff, currently incarcerated at Ware State Prison in Waycross, Georgia,[1] is proceeding

*pro se* and *in forma pauperis* ("IFP") in this civil rights case filed pursuant to 42 U.SC. § 1983

concerning events alleged to have occurred at the Telfair State Prison in Helena, Georgia.  For the

reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for

summary judgment be **DENIED** in part and **GRANTED** in part.  (Doc. no. 30.)

I.    **BACKGROUND**

A.    **Procedural Background**

Plaintiff filed his complaint on May 28, 2024.  (Doc. no. 1.)  Because he is proceeding

---

[1] A search of the Georgia Department of Corrections website indicates Plaintiff may have transferred to Dooly State Prison in Unadilla, Georgia. See https://gdc.georgia.gov; Select Offender Search, Find an Offender; Search Now; I agree; Search "Demon, Ryan"; Submit Form; Scroll to "STATE OF GEORGIA – INCARCERATION HISTORY" (last visited Feb. 18, 2026).  The Court does not condone Plaintiff's failure to send proper notifications regarding changes in address.  However, in an abundance of caution, the Court **DIRECTS** the **CLERK** to serve Plaintiff this Report and Recommendation at both Ware State Prison and Dooly State Prison.

IFP, the Court screened the complaint and found Plaintiff had arguably stated a viable excessive force claim against Defendants Unit Manager Foster, Lieutenant Malcolm Williams, and CERT Officer Clark.  (Doc. no. 13.)  On December 2, 2024, United States District Judge Dudley H. Bowen, Jr., adopted the Report and Recommendation.  (Doc. no. 16.)  Remaining Defendants filed their answer to the complaint on December 27, 2024, and the Clerk of Court issued a Scheduling Notice setting deadlines for the case. (Doc. nos. 23, 24.)  The case proceeded through the discovery period, during which Defendants took Plaintiff's deposition.  (Doc. no. 30-2, "DeMon Dep.")  Defendants Foster and Williams provided sworn declarations.  (Doc. no. 30-5, "Foster Dec."; doc. no. 30-10, "Williams Dec.")

Consistent with case deadlines, Defendants filed their motion for summary judgment on June 12, 2025.  (Doc. no. 30.)  On June 13, 2025, the Clerk of Court issued a notice to Plaintiff concerning the summary judgment motion, the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding.  (Doc. no. 31.)  On July 8, 2024, when Plaintiff failed to respond, the Court again explained the rights and requirements associated with responding and extended Plaintiff's time to respond to Defendants' motion.  (Doc. no. 32.)   Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.   Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment, dated July 25, 2025.  (Doc. no. 36.)  The filing is threadbare, consisting of three pages of general argument with no citation to the record.

 In accordance with Local Rule 56.1, Defendants submitted a Statement of Material Facts ("SMF") in support of their summary judgment motion.  (Doc. no. 30-1.)  Although Plaintiff filed a Response in Opposition, it does not respond to each fact in Defendants' Statement of

Material Facts and consists mainly of conclusory allegations, most of which are inadmissible evidence for purposes of opposing the motion for summary judgment. See Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (requiring consideration of only admissible evidence when ruling on motions for summary judgment); see also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (finding summary judgment appropriate where inmate produced nothing beyond "his own conclusory allegations" challenging actions of defendant); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."). Regardless, the Court will consider, where appropriate, Plaintiff's response and his deposition. The Court deems admitted all portions of Defendants' statements having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56.[2] See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (per curiam) (finding no error in deeming defendants' material facts admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same).

However, this does not automatically entitle Defendants to summary judgment because as the movant, Defendants continue to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir.

---

[2] Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

3

2009). Moreover, the Court is mindful it "must construe the facts and draw all inferences in the light most favorable to the nonmoving party and 'when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version*.'" Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006) (quoting Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005)). Thus, the Court will review the record, including Plaintiff's sworn deposition testimony and any factually supported opposition to the SMF, "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## B.    Factual Background

The events giving rise to this lawsuit occurred while Plaintiff was incarcerated at Telfair State Prison ("TSP") on February 18, 2023. (Doc. no. 30-11, p. 1.) At that time, Defendants Foster, Williams, and Clark were prison officials employed at TSP. (Doc. no. 23, p. 5.) The parties largely agree on the facts, with a few important exceptions as evident from review of the defense's sworn declarations and Plaintiff's deposition testimony.

### i.    Defendants' Declarations

On February 18, 2023, Defendant Williams and an unidentified CERT officer escorted Plaintiff to the medical unit at TSP. (Williams Dec. ¶ 5.) Defendant Williams called Defendant Foster for assistance when Plaintiff "became irate" while in the medical unit. (Williams Dec. ¶ 6; see also Foster Dec. ¶ 5.) Plaintiff "stated that he wanted to be placed in administrative segregation instead of his assigned dormitory, and he refused instructions to return to his assigned dormitory." (Foster Dec. ¶ 6.) Plaintiff's assigned dormitory was a general population dormitory in Building A-1. (Williams Dec. ¶ 7.) After Plaintiff continued to refuse to return to A-1, Defendant Williams and the unidentified CERT officer brought a wheelchair to Plaintiff, and the officers instructed him to sit down. (Id. ¶¶ 8-9.) "After

4

repeated instructions and attempts to have [Plaintiff] sit in the wheelchair, [he] ultimately agreed to kneel in the wheelchair with his knees in the seat, and [he] was rolled to Dormitory A-1." (Id. ¶ 12.)

Upon arriving to A-1, Plaintiff refused to go in, "jumped out of the wheelchair and began to run away from the entrance to the dormitory." (Id. ¶¶ 13-14; see also Foster Dec. ¶¶ 9-10.)  Plaintiff refused Defendant Williams' instructions to stop and allow handcuffing. (Williams Dec. ¶¶ 15-16.)  Because Plaintiff fled and refused to return to A-1, Defendant Foster instructed the escorting officers to administer pepper spray.  (Foster Dec. ¶ 11.)  "One of the escorting officers sprayed [Plaintiff] with a short burst" of pepper spray; neither Defendant Foster nor Defendant Williams recalled which officer sprayed Plaintiff.  (Foster Dec. ¶ 15; Williams Dec. ¶ 21.)  Defendant Foster instructed Plaintiff to lie on the ground so he could be handcuffed.  (Foster Dec. ¶ 16.)   When Plaintiff refused, Defendant Foster "deployed a second short burst" of pepper spray.  (Id. ¶ 17.)  Plaintiff then laid on the ground. (Id. ¶ 18.)

The officers applied restraints and escorted Plaintiff to the medical unit for decontamination and assessment.  (Id. ¶ 19; see also Williams Dec. ¶ 23-24.)  Medical records from TSP dated February 18, 2023, contain a Georgia Department of Corrections Medical Report Form that was completed and signed by a prison nurse.  (Doc. nos. 30-4, 30-7.)  The form reports "No injury noted at this time," and describes Plaintiff's condition as stable.  (Id.) An accompanying Use of Force Assessment checks the box for "normal assessment after use of force" and states "No follow-up needed."  (Id.)  It records remarks by Plaintiff that "they sprayed me," "I'm fine," and "I think I popped a hemorrhoid."  (Id.)  The assessment indicates no observed injuries and notes Plaintiff was "alert."  (Id.)  After going to medical, Plaintiff

was escorted to a cell in administrative segregation.  (Williams Dec. ¶¶ 25; Foster Dec. ¶¶ 22-23; doc. no. 30-9.)

### ii.    Plaintiff's Sworn Testimony

Plaintiff admits that, after receiving treatment in the medical unit on February 18, 2023, he repeatedly refused orders to return to his assigned A-1 dormitory and demanded transfer to administrative segregation.  (Demon Dep., pp. 51, 58-59.)  Defendants Clark, Foster, Williams, and at least one unnamed officer arrived to escort Plaintiff from the medical unit.  (See id. at 57-59, 64, 69.)  Plaintiff was determined to go to administrative segregation despite Defendant Foster repeatedly instructing him to return to A-1.  (Id. at 58-62.)  "[T]he situation gradually shifted[,]" and Defendant Foster began "pointing her finger and shoving" Plaintiff.  (Id. at 62.)  Plaintiff continued refusing to comply; Defendant Foster pushed Plaintiff from behind, first with her hand and then with her shoulder.  (Id. at 62-63.)  Defendant Foster told Plaintiff there were no beds available in segregation.  (Id. at 67.)

On Defendant Foster's instructions, the officers got leg irons and a wheelchair, placing the leg irons on Plaintiff while positioning the wheelchair behind him.  (Id. at 69-70.)  Defendant Williams pulled Plaintiff's left arm, another officer pulled his right arm, and Defendant Clark grabbed Plaintiff's shoulder; together they tried to push Plaintiff backward while Defendant Foster rammed the back of his knees with the wheelchair to make him sit.  (Id. at 70-71, 115.)  Plaintiff resisted sitting in the wheelchair out of concern for his hemorrhoids.  (Id. at 71-72; see also id. at 53.)  Defendants threatened to pepper spray him.  (Id. at 74.)  Defendant Williams pleaded with Plaintiff to comply for the time being by going to his assigned dorm, and Defendant Williams would move him to segregation later.  (Id. at

74-75.)  Plaintiff agreed to kneel in the wheelchair with his legs shackled.  (Id. at 77.)  The officers rolled Plaintiff in the chair toward A-1.  (Id.)

As this unusual entourage neared A-1, Plaintiff got out of the wheelchair and insisted he would only go to segregation.  (Id. at 78-79.)  Defendant Foster told the other officers to pepper spray Plaintiff.  (Id. at 79.)  Defendant Williams and an unknown officer deployed pepper spray:  "one of them got the spray all in [Plaintiff's] face and on [his] head."  (Id.)  The officers ordered Plaintiff to "get down," and he complied.  (Id. at 79-80.)  Defendant Foster then "ran over, while [Plaintiff was] on the ground laying down, and tried to spray [him] in [his] face."  (Id. at 80.)  Plaintiff "rolled off, but she still kind of got [him].  And that's when they cuffed [him] up and lifted [him] and ran . . . back down the sidewalk."  (Id.)  Plaintiff described the ensuing events as follows:

> And they was like, yeah you walking fine now.  But I wasn't walking.  They were carrying me.  And I'm hurting.  I'm steady moving but I'm blinded.  And they took me all the way to intake and opened the door to intake, took me in there and just threw me into a holding cell from the door.  Like you get to a holding cell, open the door and just threw me across the bench.  And I hit the floor, hit the toilet and laid there until they came back to get me. Then they took me to segregation. . . . I probably laid on the floor in there . . . I got up, tried to get myself up – probably 10, 15 minutes.  Maybe more. I can't really say.  Just laying on the – they just left me in there with leg irons, cuffed. . . .

(Id. at 80-81.)  "And they closed the door, stayed gone for however long – 15, 20, 25 minutes." (Id. at 91.)  When the officers came back, they took Plaintiff to a cell in segregation and informed that he had "lost the right to have [his] property."  (Id. at 81.)  Plaintiff never saw medical after being pepper sprayed.  (Id. at 103-06.)  When shown the prison medical records purporting to show the officers took him to the medical unit for evaluation and decontamination immediately after the confrontation, Plaintiff insisted it was falsified and testified the officers never took him to the medical unit.  (Id.)

The officers left him without a mattress or replacement clothing until March 13, 2023. (Id. at 99-100, 103; see also doc. no. 1, p. 5.)  Because the pepper spray residue on his clothing was "loud" and both Plaintiff and his roommate were "being choked by it," Plaintiff sent most of his clothes to the laundry; when he never got his clothes or replacements back, he repeatedly complained and alerted officers he needed new clothes by yelling under the door of his cell. (DeMon Dep., pp. 99-100.)

When asked to characterize his injuries, Plaintiff said: "I can't characterize anything. I'm not a doctor.  I'm not a specialist . . . No one checked.  Medical doesn't know.  Security doesn't know.  Administration doesn't know and the inmate doesn't know.  Only God knows." (Id. at 107-08.)

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. Cty. of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case [. . . ], no reasonable jury could find for the nonmoving party."  U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the

record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Federal Rule Civil Procedure 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B.    Excessive Force Standard

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id. *De minimis* uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it

"may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted).

However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). That is, the extent of a plaintiff's injury may be considered, but it is not the central consideration, and "significant injury" is not required to maintain an excessive force claim. Id. at 37. Thus, the "core judicial inquiry" for an Eighth Amendment excessive force claim is not based on the extent of Plaintiff's injury, but rather on "the nature of the force" used, *i.e.*, "whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Id. at 39.

Subjectively, Plaintiff must show the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is,

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

[C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.  Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322).  Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375.

Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security.  Hudson, 503 U.S. at 6; Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*).  For example, use of an appropriate degree of force to compel compliance with a valid order is justified.  Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

### C.    No Reasonable Juror Could Find Excessive Force in Actions Taken While Plaintiff Refused Commands to Return to His Assigned Cell in Dorm A-1

Plaintiff's own testimony shows he repeatedly resisted Defendants' valid orders and pleas for him to return to his assigned dormitory, A-1.  The undisputed facts further show that Defendants did not immediately resort to force but instead tried to convince him to comply first.  When he continued to refuse, Defendants escalated by pushing him and attempting to

11

force him into a wheelchair.  Defendants then allowed Plaintiff to kneel, rather than sit, in the wheelchair so as not to exacerbate his hemorrhoid.  No reasonable juror could find Defendants' actions up to that point were a "malicious and sadistic" attempt to cause Plaintiff harm.  If anything, Defendants' actions up to this point show they sought to avoid harming him while steadily escalating their use of force to gain his compliance with their valid order.    After a short period of compliance, Plaintiff admittedly renewed the struggle by getting out of the wheelchair and doubling down on his insistence to abort the trip to A-1 and travel to his preferred destination of administrative segregation.  By Plaintiff's own admission, he was determined not to comply with Defendants' orders to return to his dormitory.  As he had already shown he was impervious to being pulled, pushed, or otherwise physically forced to comply, Defendants' decision to deploy a short burst of pepper spray and thus avoid further escalation was not disproportionate.

"Pepper spray is an accepted non-lethal means of controlling unruly inmates," and "[p]rison guards may use force when necessary to restore order . . . ."  Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized in* Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010).  The Eleventh Circuit has recognized the use of sprays with inflammatory properties may be a reasonable alternative to escalating a potentially dangerous situation without causing permanent injury.  See Danley, 540 F.3d at 1307-08; Burke v. Bowns, 653 F. App'x 683, 696 (11th Cir. 2016) (*per curiam*).  However, the temporary pain caused by pepper spray may still be constitutionally cognizable "where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm . . . ."  Thomas v. Bryant, 614 F.3d 1288, 1311 (11th Cir. 2010).

12

"Not every instance of inmate resistance justifies the use of force, and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions.'" Rivera v. McNeal, No. CV 1:19-1037-KD-N, 2021 WL 1151558, at *6 (S.D. Ala. Feb. 24, 2021) (quoting Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002)), *adopted by* 2021 WL 1151533 (S.D. Ala. Mar. 25, 2021). Thus, while "[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders[,]" the analysis still requires "an assessment of 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them[.]'" Danley, 540 F.3d at 1307-08 (quoting Whitley, 475 U.S. at 321).

Here, no reasonable juror could find that Defendants' actions through and including the first use of pepper spray were unnecessary, unreasonable, or applied maliciously or sadistically rather than in a good-faith effort to maintain or restore discipline. Accordingly, Defendants are entitled to summary judgment concerning these aspects of Plaintiff's excessive force claim.

### D.    A Jury Must Determine Whether The Second Use of Pepper Spray and Alleged Refusal to Decontaminate Were Malicious and Sadistic

Construing the facts in Plaintiff's favor, reasonable jurors could find Defendant Foster's use of pepper spray—i.e., the second time Plaintiff was allegedly sprayed—was unnecessary, unreasonable, and applied maliciously or sadistically rather than in a good-faith effort to maintain or restore discipline. Indeed, reasonable jurors could find there was no need for this second application of force because by then, according to Plaintiff's testimony, he was on his knees and no longer resisting the officers' commands or handcuffing. "Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need." Danley, 540 F.3d at 1309; see also Williams v. Rickman, 759

13

F. App'x 849, 852 (11th Cir. 2019) (*per curiam*) ("[U]se of pepper spray was not penologically justified—because Mr. Williams was not misbehaving—and constituted excessive force.").

Reasonable jurors could also find that Defendants refused to provide medical evaluation and decontamination after the pepper spraying occurred. Defendants aver they took Plaintiff to the medical unit for evaluation and decontamination after he was pepper sprayed. At his deposition, however, Plaintiff testified he did not see medical, was not given an opportunity to decontaminate, and was left restrained for some time and in pepper spray-covered clothes for days. He alleges the lingering effects of the pepper spray obscured his vision and caused both him and his roommate to choke.

When confronted with the medical records from his alleged visit to the medical unit for evaluation and decontamination, Plaintiff testified the forms were falsified and the medical treatment never occurred. His testimony is sufficient to create an issue of material fact such that summary judgment is not appropriate. Sears v. Warden Okeechobee Corr. Inst., 762 F. App'x 910, 916 (11th Cir. 2019) (*per curiam*) (finding district court erred by relying on prison medical records in granting summary judgment because accuracy of records "was not uncontroverted" based on prisoner's claim that nurse failed to accurately document injuries). "[A]n affidavit which satisfies Rule 56 and is based on personal knowledge 'may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated.' . . . The same principle, of course, applies to a witness' first-hand account provided at a deposition." Williams v. Radford, 64 F.4th 1185, 1198 (11th Cir. 2023) (quoting United States v. Stein, 881 F.3d 853, 854 (11th Cir. 2018) (*en banc*)). A jury must review the record and decide these disputed issues of fact.

The Eleventh Circuit has held refusal to allow a prisoner to decontaminate after being pepper sprayed amounts to a failure to adequately temper the severity of the use of force, and may constitute excessive use of force. See Pearson v. Taylor, 665 F. App'x 858, 865 (11th Cir. 2016). "Although less common than the direct application of force, subjecting a prisoner to special confinement that causes him to suffer increased effects of environmental conditions—here, the pepper spray lingering in the air and on him—can constitute excessive force." Danley v. Allen, 540 F.3d at 1308. "The Court must look at the entire sequence of the alleged excessive use of force, which includes any alleged failure to decontaminate." Redmon v. Shropshire, 2022 WL 877497 (M.D. Ga. Jan. 12, 2022), *report and recommendation adopted*, 2022 WL 543003 (M.D. Ga. Feb. 23, 2022). "[E]ven when an initial use of force against a prisoner is constitutionally permissible, continued force is excessive after the prisoner has complied and control has been restored. . . Force includes the confinement of a compliant prisoner in a contaminated cell." Williams, 759 F. App'x at 853 (11th Cir. 2019).

Because an issue of material fact exists as to whether the second pepper spray and the alleged refusal to decontaminate were malicious and sadistic, Defendants are not entitled to summary judgment.

### E.      Defendants Are Not Entitled to Qualified Immunity for Any Surviving Claim

Defendants, as a collective group, argue they are entitled to qualified immunity as to all claims raised against any one of them in a two-paragraph statement. (Doc. no. 30, pp. 13-14.)  However, a qualified immunity defense is not available on the excessive force claim. Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002), *overruled on other grounds by* Pearson v. Callahan, 555 U.S. 223 (2009).  Use of excessive force is clearly established to

be a violation of the Constitution. Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 319. Because there is "simply no room for a qualified immunity defense when the plaintiff alleges such a violation," the sole question is "whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment." Skrtich, 280 F.3d at 1301. As discussed above, there are material disputes of fact as to the excessive force claim, and thus, summary judgment should be denied to the extent Defendants argue qualified immunity shields them from liability. Bowden v. Stokley, 576 F. App'x 951, 955 (11th Cir. 2014) ("[W]here the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate.")

**F. Summary Judgment on the Claim for Compensatory Damages Is Not Appropriate**

Defendants also argue that Plaintiff is not entitled to compensatory damages even if a constitutional violation is found, under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), ("PLRA"), because his injuries are *de minimis*. (Doc. no. 30-11, pp. 12-13.)

Section § 1997e(e) provides, in pertinent part, as follows: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Thus, the PLRA prohibits federal civil actions by prisoners alleging purely mental or emotional injury and no physical injury. Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1312-13 (11th Cir. 2002). To survive application of the § 1997e(e) bar, the physical injury must be more than *de minimis*. Id. at 1213. "The meaning of the phrase 'greater than *de minimis*,' however, is far from clear." Chatham v. Adcock, 334 F. App'x 281, 284 (11th Cir. 2009) (*per curiam*). In the context of injury resulting from pepper

16

spraying, the Eleventh Circuit has ruled "§ 1997e(e) does not automatically bar compensatory or punitive damages for injuries, like pepper spraying, which normally leave 'no lasting effect[ ].' " Thompson v. Smith, 805 F. App'x 893, 902 (11th Cir. 2020) (*per curiam*), *overruled on other grounds by* Hoever v. Marks, 993 F.3d 1353 (11th Cir. 2021). Cf. Concepcion-Padilla v. Godwin, Case No. 5:23-cv-59, 2023 WL 12094760 at *4 (N.D. Fla. Dec. 8, 2023), *report and recommendation adopted*, Case No. 5:23-cv-59, doc. no. 42 (N.D. Fla. Jan. 12, 2024) ("Pepper-spraying-related injuries that have been held sufficient to overcome § 1997e(e)'s limitation have been of a more severe and long-lasting nature—or have involved exacerbated effects of pepper spray from delayed or insufficient decontamination . . . .").

Here, Plaintiff's testimony supports a finding of more than *de minimis* injury because Plaintiff alleges he suffered days of difficulty breathing, discomfort due to contaminated clothes and the subsequent lack of adequate clothing, and difficulty seeing. Thompson, 805 F. App'x at 905 (determining reasonable jury could find injuries exceeded *de minimis* threshold based on claim prisoner was peppered sprayed and left with chemical on face for twenty minutes, experienced difficulty breathing, coughing, and extended burning sensation on skin, was forced into extended shower that exacerbated effects, and returned to contaminated cell for additional day, even if professional medical attention not required); but see Pierre v. Padgett, 808 F. App'x 838, 844 (11th Cir. 2020) (*per curiam*) (explaining recovery of damages under PLRA differs from Eighth Amendment excessive force claim and scrapes, scratches, minor bruising or swelling, or "momentary discomfort" beyond temporary burning sensation from pepper spray does not satisfy requirement for more than *de minimis* physical injury).

17

Thus, summary judgment should be denied on the issue of availability of compensatory damages.

**G.  Summary Judgment is Appropriate Concerning the Prison Transfer Demand**

Because it is undisputed that Plaintiff is no longer an inmate at TSP, his request for equitable relief in the form of a transfer from that institution is moot and summary judgment is proper.

**III.   CONCLUSION**

For the reasons set forth above, the Court **REPORTS and RECOMMENDS** Defendants' motion for summary judgment be **GRANTED** in part and **DENIED** in part. (Doc. no. 30.)  The case should proceed to trial on the excessive force claim against Defendant Foster with respect to the second pepper spray and against all defendants with respect to their alleged actions after the second pepper spray of throwing him forcefully into a cell and depriving him of pepper spray decontamination.

SO REPORTED AND RECOMMENDED this 18th day of February, 2026, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA